UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In the matter of FISH N DIVE LLC, HONO GROUP LLC, HONU WATERSPORTS LLC, and MATTHEW J. ZIMMERMAN as owners of the single decked passenger vessel DIVE BARGE, Official Number 1278007, for exoneration from and/or limitation of liability,<br><br>                Plaintiffs-in-Limitation. | CIV. NO. 19-00604 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART
THE TSOGT CLAIMANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT FOR FAILURE BY PLAINTIFFS-IN LIMITATION
TO FILE ACTION WITHIN SIX MONTHS OF RECEIVING NOTICE OF A CLAIM**

On July 23, 2020, Claimants-in-Limitation James A. Liotta, as Personal Representative of the Estate of T.T., deceased; Tsogt Natsagdorj, individually and as next friend of K.T., a minor; and Enkhsuvd Batbold ("Tsogt Claimants") filed their Motion to Dismiss or for Summary Judgment for Failure by Plaintiffs-in Limitation to File Action Within Six Months of Receiving Notice of a Claim ("Motion"). [Dkt. no. 101.] Plaintiffs-in-Limitation Fish N Dive LLC, Honu Group LLC, Honu Watersports LLC, and Matthew J. Zimmerman ("Zimmerman" and all collectively "Limitation Plaintiffs") filed their memorandum in opposition on August 7, 2020, and PADI Worldwide Corporation and

PADI Americas, Inc., who identify themselves as "Interested Parties" ("PADI Entities"), filed a joinder in the memorandum in opposition on August 21, 2020.  [Dkt. nos. 104, 110.]  The Tsogt Claimants filed their reply on August 14, 2020.  [Dkt. no. 106.] This matter came on for hearing on August 28, 2020.

On September 25, 2020, an entering order was issued informing the parties of the Court's rulings on the Motion. [Dkt. no. 113.]  This Order supersedes that entering order.  The Tsogt Claimants' Motion is hereby granted in part and denied in part for the reasons set forth below.  The Motion is denied as to the request to dismiss the action for lack of subject matter jurisdiction, and the Motion is granted as to the request for summary judgment on the ground that this action is untimely.

## BACKGROUND

The Limitation Plaintiffs initiated this action on November 5, 2019.  [Complaint for Exoneration from or Limitation of Liability ("Complaint") (dkt. no. 1).]  The Limitation Plaintiffs filed their First Amended Complaint for Exoneration from or Limitation of Liability ("First Amended Complaint") on January 17, 2020.[1]  [Dkt. no. 45.]  The Limitation Plaintiffs

---

[1] Ricky T. Rivera ("Rivera"), proceeding pro se, filed a claim on February 5, 2020, an answer to the First Amended Complaint on February 18, 2020, and an amended answer on February 24, 2020.  [Dkt. nos. 68, 72, 73.]  On June 26, 2020,
(. . . continued)

state they are the "owners and/or owners *pro hac vice* of the single decked passenger vessel DIVE BARGE, Official Number 1278007, ('VESSEL')," and they seek "exoneration from and/or limitation of liability, civil and maritime, brought pursuant to 46 U.S.C. § 30501, *et seq.*," which is part of the Limitation of Liability Act of 1851 ("Limitation Act" or "the Act"). [First Amended Complaint at pg. 1 (emphases in original).] They allege "the estimated fair market value of the VESSEL and her appurtenances at the termination of the voyage at issue upon return to the dock . . . did not exceed Forty Thousand US Dollars ($40,000)." [Id. at ¶ 16 (emphasis in original).]

The instant case arises from a January 5, 2019 incident in which T.T., who was thirteen years old, drowned during the Discover Scuba Diving ("DSD") Experience, which was provided by the Limitation Plaintiffs, doing business as Island Divers Hawaii ("IDH"). At all relevant times, Zimmerman was the sole member and manager of Honu Group LLC, and Honu Group LLC was the sole member and manager of both Defendant Fish N Dive LLC and Defendant Honu Watersports LLC. [Tsogt Claimant's Concise Statement of Material Facts in Supp. of Motion ("Tsogt Claimants' CSOF"), filed 7/23/20 (dkt. no. 102), at ¶¶ 1-2;

---

this Court approved the parties' stipulation to dismiss Rivera's claim with prejudice. [Dkt. no. 93.]

Limitation Pltfs.' Response to Tsogt Claimants CSOF ("Limitation Pltfs.' CSOF"), filed 8/7/20 (dkt. no. 104-6), at ¶¶ 1-2 (admitting the Tsogt Claimants' ¶¶ 1-2).[2]]  On the date in question, the Vessel was used both to take the DSD Experience group to the dive site and as a dive platform.  [Tsogt Claimants' CSOF at ¶ 8; Limitation Pltfs.' CSOF at ¶ 8 (admitting that part of the Tsogt Claimants' ¶ 8).]

A liability action arising from T.T.'s death is pending in the State of Hawai`i First Circuit Court ("Underlying Action").  See Limitation Plaintiffs' CSOF, Decl. of Marker E. Lovell, Jr. ("Lovell Decl."), Exh. B (Complaint in James A. Liotta, as Personal Representative of the Estate of T.T., deceased, et al. v. PADI Americas, Inc., et al., Civil No. 19-1-1488-09, 11th Div. ("Underlying Complaint"), filed 9/19/19). The Limitation Plaintiffs are among the defendants in the Underlying Action.

The DSD Experience group consisted of four novice divers, including T.T., and an instructor, Tyler Brown ("Brown").[3]  [Tsogt Claimants' CSOF at ¶ 8.]  The group

_____

[2] The Limitation Plaintiffs' CSOF is an attachment to their memorandum in opposition.

[3] Brown and Hawaii Sports, Inc. ("HSI" and collectively "HSI Claimants") filed a Notice of Claim and Answer to the Complaint on December 16, 2019.  [Dkt. no. 16.]  The HSI Claimants have not filed a response to the First Amended Complaint.

(. . . continued)

4

participated in an open water dive.  [Tsogt Claimants' CSOF,
Decl. of Michael K. Livingston ("Livingston Decl."), Exh. A
(trans. excerpts of Zimmerman's 6/30/20 depo. ("Zimmerman
Depo.")) at 57.]   The PADI Discover Scuba Diving Program
Instructor Guide ("DSD Instructor Guide") states a four-to-one
participant-to-instructor ratio is permitted in a DSD open water
dive.  [Id., Exh. B (DSD Instructor Guide) at TYLERBROWN133.]
Participants can be as young as ten years old, and the DSD
program can be used for people with no prior scuba diving
experience.  [Id., Exh. A (Zimmerman Depo.) at 111-12.]

        The DSD Instructor Guide includes the following among
the "PROGRAM STANDARDS" for "Supervision":

>        Do not leave participants unattended, either at
>        the surface or underwater.
>
> •      Position yourself so that you or a certified
>        assistant can make immediate physical
>        contact with, adjust buoyancy for, and
>        render assistance to, participants.
>
> •      Continually observe participants with only
>        the brief, periodic interruptions needed to
>        lead the dive and to provide assistance to
>        individual divers.
>
>        . . . .

[Id., Exh. B (DSD Instructor Guide) at TYLERBROWN132,
TYLERBROWN134.]  Brown admitted in his hand-written statement
for the police that he lost sight of two of the four divers

during the DSD dive that T.T. was part of.  [Id., Exh. F
(excerpts of Production of Documents from the Honolulu Police
Department ("HPD"), received on 4/9/20, pursuant to subpoena
duces tecum ("HPD Incident Report")) at 57.]

The Tsogt Claimants argue the IDH Handbook shows that
the Limitation Plaintiffs knew a breach of the safety rules in
the DSD Instructor Guide would likely result in a lawsuit.
[Tsogt Claimants' CSOF at ¶ 7 (some citations omitted) (citing
Livingston Decl., Exh. C (IDH Handbook) at FND0033-0039).]  The
Safety section of the IDH Handbook states:

> To ensure the safety of employees and
> guests, the Dive Center has an emergency plan of
> action.  You must know where this emergency plans
> are [sic] located and educate yourself on the
> actions you must take in case of emergency.  You
> can help prevent and reduce accidents and
> injuries through comprehensive safety awareness
> and immediate reporting and correction of
> hazardous conditions.  Immediately report any
> injury or accident to senior staff members as
> well as owner.  **In the case of an accident severe
> enough that it might result in legal action, do
> not give statements to police or USCG without
> seeking the benefits of legal counsel.**

[Livingston Decl., Exh. C (IDH Handbook) at FND0038 (emphasis
added).]

On the day of the incident, after receiving at least
two telephone calls from someone aboard the Vessel about a
missing diver, Zimmerman went to the IDH shop from his home.
Zimmerman met multiple HPD officers at the shop.  [Id., Exh. A

(Zimmerman Depo.) at 118-21.]   Zimmerman also acknowledged that he called his attorney on the date of the incident,[4] but he stated he called his attorney after one of the police officers threated to arrest him for interfering with the investigation. The officer alleged Zimmerman was interfering with the investigation because Zimmerman objected to the officers' refusal to provide copies of witness statements. [Id. at 125-26.]

On January 7, 2019, Loretta Sheehan, Esq., on behalf of the Davis Levin Livingston law firm, sent a letter to IDH, also known as Honu Watersports LLC, directed to Zimmerman's attention, regarding "Preservation of Evidence" ("Preservation of Evidence Letter"). [Livingston Decl., Exh. K.] The letter stated, in pertinent part:

> This law firm has been retained to investigate the death of T T on January 5, 2019, while he was participating in a drift dive with your company, Island Divers Hawaii.
>
> I would like to request at this time that any and all evidence potentially related to this incident be preserved.  Specifically, please preserve any and all equipment that was used by any and all participants on the dive involving Mr. T.  Please preserve all documents provided to and signed by Mr. T, his parents or guardians, including waivers and consent documents.  In addition, please preserve any and all

---

[4] Zimmerman identified Normand Lezy, Esq., as the attorney he called.  [Livingston Decl., Exh. A (Zimmerman Depo.) at 165.]

photographs, videos, logs, captain manifests,
printouts of coordinates, rosters identifying
other participants (e.g., divers, dive masters,
dive instructors, crew, etc.), and other
information related to Mr. T's interaction with
your company.

We have sent (and copied you on) a similar
letter to the Honolulu Police Department and the
Honolulu Fire Department regarding the items
found during the search and recovery efforts.[5]
If you come into possession of these, or any,
items recovered by or in the possession of third
parties, we would ask that you preserve these as
well.  We will consider it spoliation of evidence
if Island Divers Hawaii alters, modifies, or
destroys the evidence involved in this accident.
Accordingly, please store the evidence in a safe
place.

[Livingston Decl., Exh. G (Preservation of Evidence Letter).]

Neither the Limitation Plaintiffs nor their counsel received any

further written communications from the Tsogt Claimants' counsel

after the Preservation of Evidence Letter.  [Lovell Decl. at

¶ 4.]

Normand Lezy, Esq., of Cox, Wootton, Lerner, Griffin &

Hansen LLP, sent a letter to Ms. Sheehan, dated January 22,

2019, acknowledging receipt of the Preservation of Evidence

Letter.  Mr. Lezy also directed Ms. Sheehan and her law firm not

to communicate directly with Zimmerman or any of Honu

Watersports LLC's other employees, and to direct all

---

[5] The Limitation Plaintiffs submitted copies of these
letters to HPD and the Honolulu Fire Department ("HFD").
[Limitation Plaintiffs' CSOF, Decl. of Marker E. Lovell, Jr.
("Lovell Decl."), Exh. A (letter to HPD and letter to HFD).]

communications to Mr. Lezy and his law firm.  [Livingston Decl., Exh. L.]

In the instant Motion, the Tsogt Claimants argue this limitation action should be dismissed with prejudice.  They assert subject matter jurisdiction is lacking because the Limitation Plaintiffs failed to file the action within six months after they were provided with written notice of a claim. Even if the failure to file the action within six months does deprive this Court of jurisdiction, the Tsogt Claimants argue they are entitled to summary judgment because of the untimely filing.

## **DISCUSSION**

The Limitation Act states: "The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter.  The action must be brought within 6 months after a claimant gives the owner written notice of a claim."  46 U.S.C. § 30511(a).  This Court has stated:

> "The Limitation of Liability Act limits shipowner liability arising from the unseaworthiness of the shipowner's vessel or the negligence of the vessel's crew unless the condition of unseaworthiness or the act of negligence was within the shipowner's 'privity or knowledge.'"  In re BOWFIN M/V, 339 F.3d 1137, 1137 (9th Cir. 2003) (per curiam) (quoting 46 U.S.C. § 30505).  The purpose of the Limitation Act is to "encourage ship-building and to induce capitalists to invest money in this branch of

industry." <u>Lewis v. Lewis & Clark Marine, Inc.</u>, 531 U.S. 438, 446 (2001) (citations and internal quotation marks omitted).  The form of the limitation proceeding directs "all claims against an owner to be aggregated and decided at one time under a single set of substantive and procedural rules, thereby avoiding inconsistent results and repetitive litigation." <u>In re Complaint of Paradise Holdings, Inc.</u>, 795 F.2d 756, 761 (9th Cir. 1986) (citing <u>Maryland Casualty Co. v. Cushing</u>, 347 U.S. 409, 414-16, 74 S. Ct. 608, 610-12, 98 L. Ed. 806 (1954) (plurality opinion)). . . .

<u>In re Lava Ocean Tours Inc.</u>, CIV. NO. 19-00023 LEK-RLP, 2019 WL 2330268, at *2 (D. Hawai`i May 31, 2019).  This district court has also stated:

Many cases have criticized the Act as "hopelessly anachronistic." <u>Keys Jet Ski, Inc. v. Kays</u>, 893 F.2d 1225, 1228 (11th Cir. 1990) (quoting <u>Univ. of Texas Med. Branch at Galveston v. United States</u>, 557 F.2d 438, 441 (5th Cir. 1977), *cert. denied*, 439 U.S. 820(1978)); <u>see also</u> Esta Later Charters, Inc. V. [sic] Ignacio, 875 F.2d 234, 235-37 (9th Cir. 1989) ("[n]o one who has had occasion to study the Limitation of Liability Act has been struck by its lucidity."); <u>In re United States Dredging Corp.</u>, 264 F.2d 339, 341 (2d Cir.) *cert. denied*, 360 U.S. 932 (1959) (suggesting that the Act, a relic of an earlier era, provides unwarranted protections inconsistent with current reality); <u>Lewis Charters, Inc. V. [sic] Huckins Yacht Corp.</u>, 871 F.2d 1046, 1054 (11th Cir1989) [sic] ("owners of pleasure vessels may limit their liability under the Limitation Act [although] . . . there is little reason for such a rule").  Despite vast criticism, the Court is bound to apply the Act. It is for Congress to determine whether the Act should be repealed or limited to fit the current needs of the maritime industry.

In re Hawaiian Watersports, LLC, CIV. No. 07-00617 ACK/BMK, 2008 WL 3065381, at *2 (D. Hawai`i Feb. 29, 2008) (some alterations in Hawaiian Watersports).  Thus, this Court too is required to follow the Limitation Act.

## I.    **Request for Dismissal**

The Limitation Act is not an independent source of admiralty and maritime jurisdiction.  See Seven Resorts, Inc. v. Cantlen, 57 F.3d 771, 772-73 (9th Cir. 1995).  Instead, jurisdiction in this case is based on 28 U.S.C. § 1333(1), which grants exclusive, original jurisdiction to the United States District Courts over civil actions involving admiralty and maritime jurisdiction.  See First Amended Complaint at ¶ 1.

A defendant "must clear a high bar to establish that a statute of limitations is jurisdictional." United States v. Wong, 575 U.S. 402, 409 (2015).  The United States Supreme Court has stated:

> In recent years, we have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has "clearly state[d]" as much.  Sebelius v. Auburn Regional Medical Center, 568 U.S. 145, 153 (2013) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 515 (2006)); see Gonzalez [v. Thaler], 565 U.S.[ 134,] 141-142 [(2012)].  "[A]bsent such a clear statement, . . . 'courts should treat the restriction as nonjurisdictional.'" Auburn Regional, 568 U.S., at 153 (quoting Arbaugh, 546 U.S., at 516).  That does not mean "Congress must incant magic words." Auburn Regional, 568 U.S., at 153.  But traditional tools of statutory construction must plainly show that Congress

imbued a procedural bar with jurisdictional consequences.

And in applying that clear statement rule, we have made plain that most time bars are nonjurisdictional. See, *e.g.*, id., at 154-155 (noting the rarity of jurisdictional time limits). Time and again, we have described filing deadlines as "quintessential claim-processing rules," which "seek to promote the orderly progress of litigation," but do not deprive a court of authority to hear a case. Henderson v. Shinseki, 562 U.S. 428, 435 (2011); see Auburn Regional, 568 U.S., at 154; Scarborough v. Principi, 541 U.S. 401, 413 (2004). That is so, contrary to the dissent's suggestion, see *post*, at 423, 430, even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are); indeed, that is so "however emphatic[ally]" expressed those terms may be, Henderson, 562 U.S., at 439 (quoting Union Pacific R. Co. v. Locomotive Engineers, 558 U.S. 67, 81 (2009)). Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it.

Id. at 409-10 (some alterations in Wong).

Wong involved a claim brought pursuant to the Federal Tort Claims Act, which "provides that a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." Id. at 405 (quoting 28 U.S.C. § 2401(b)). The Supreme Court held that this language did not constitute a clear statement that the statute of limitations was jurisdictional. Id. at 420. In contrast,

12

the Supreme Court has stated that "'clear' jurisdictional language" is present in 28 U.S.C. § 2253(c)(1).  <u>Gonzalez</u>, 565 U.S. at 142.  Section 2253(c)(1) states:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
>> (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B)  the final order in a proceeding under section 2255.

The language of § 30511(a) is more like the language of § 2401(b) than the language of § 2253(c)(1).  There is no clear jurisdictional language in the text of § 30511(a). Further, the Tsogt Claimants have not identified, nor is this Court aware of, any clear statement in the Limitation Act's legislative history showing that Congress intended the six-month period in § 30511(a) to be jurisdictional.  This Court therefore concludes that the six-month period in § 30511(a) is a claims processing rule, not a jurisdictional requirement.

The Motion is denied to the extent that it seeks dismissal of the First Amended Complaint for lack of subject matter jurisdiction.  The issue of whether the Limitation Plaintiffs filed this action within six months after receiving "written notice of a claim" will be determined under the summary judgment standard.

13

II.  **Request for Summary Judgment**

A.  **Scope of the Summary Judgment Record**

At the outset, the Court notes that the Limitation Plaintiffs and the Tsogt Claimants disagree regarding whether this Court can consider evidence beyond the incident itself and the Preservation of Evidence Letter.  However, this Court is not required to make any conclusions regarding this issue.  Even if this Court does not consider the other evidence submitted in support of the Motion, this Court would still conclude that the Preservation of Evidence Letter constitutes a written notice of a claim for purposes of § 30511(a).  Because this Court has not considered evidence beyond the incident and the Preservation of Evidence Letter, it is not necessary to resolve the Limitation Plaintiffs' evidentiary objections.

B.  **Written Notice of a Claim**

This district court has stated:

> Unfortunately, the Act is not clear as to what constitutes "written notice of claim" sufficient to trigger the start of the six-month period.  See Doxsee Sea Clam Co. [v. Brown], 13 F.3d [550,] 554 [(2d Cir. 1994)]; see also [In re] UFO Chuting of Hawaii, Inc., 233 F. Supp. 2d [1254,] 1257 [(D. Hawai`i 2001)].
>
> It is well settled that letters sent by claimants to vessel owners may, in some circumstances, constitute notice sufficient to trigger the six-month rule under the Act.  Doxsee Sea Clam Co., 13 F.3d at 554; In re Beesley's Point Sea-Doo, Inc.; 956 F. Supp. 538, 540 (D.N.J. 1997).  To determine whether a letter is

sufficient to constitute written notice of a
claim and trigger the six-month statute of
limitations, the Court must consider whether the
letter: (1) informs the shipowner of an actual or
potential claim (2) which may exceed the value of
the vessel (3) and is subject to limitation.  See
Doxsee Sea Clam Co., 13 F.3d at 554; see also In
re McCarthy Bros. Co./Clark Bridge, 83 F.3d 821,
829 (7th Cir. 1996); In re Darin Alan, Inc.,
No. C 03-5639(VRW), 2004 WL 3310574 (N.D .Cal.
Nov. 30, 2004).  The last requirement must reveal
a 'reasonable possibility' that the claim made is
one subject to limitation.  See In re Tom-Mac,
Inc., 76 F.3d 678, 683 (5th Cir. 1996).  A letter
purporting to give sufficient notice to a vessel
owner must be read in its entirety and the "whole
tenor" of the letter must be considered.  Doxsee
Sea Clam Co., 13 F.3d at 554.

When doubt exists as to whether a claim will
exceed the value of the vessel, the owner "will
not be excused from complying with the six-month
time bar."  See Van Le v. Five Fathoms, Inc., 792
F. Supp. 372 374 (D.N.J. 1992).  It is the vessel
owner's burden "to seek clarification" regarding
the amount of damages sought.  Doxsee Sea Clam
Co., 13 F.3d at 554-555.  The six-month period
gives vessel owners time to investigate whether
the amount of the claim or other claims likely to
be the subject of litigation may exceed the value
of the vessel.  See UFO Chuting of Hawaii, Inc.,
233 F. Supp. 2d at 1257 (citing In re Morania
Barge No. 190, Inc., 690 F.2d 32, 33-34 (2d Cir.
1982).

Hawaiian Watersports, 2008 WL 3065381, at *3.  In the absence of

Ninth Circuit case law addressing what is required for a writing

to constitute a notice of a claim for purposes of § 30511(a),

this Court agrees with and adopts the three requirements listed

in Hawaiian Watersports and Doxsee Sea Clam ("Doxsee requirements").[6]

The first requirement is the central issue in the Motion. See Mem. in Opp. at 12 ("The instant case primarily involves the first prong: whether the 'Preservation of Evidence' letter informed the vessel owners of an actual or potential claim."). The second and third Doxsee requirements will be addressed briefly.

As to the second requirements, whether the actual or potential claim may exceed the value of the vessel, the Limitation Plaintiffs have "aver[ed] and stipulate[d]" that the Vessel and its appurtenances were valued at $40,000 at the time of the incident. [First Amended Complaint at ¶ 16.] Because T.T. died as a result of the DSD Experience, of which use of the Dive Barge was a part, the recipients of the Preservation of Evidence Letter "should have been on notice that any potential claim relating to the death of Decedent would obviously exceed the value of the [vessel] at issue . . . ." See Hawaiian

---

[6] Hawaiian Watersports addressed the "written notice of a claim" requirement in the context of a motion to dismiss for lack of subject matter jurisdiction. 2008 WL 3065381, at *1. This Court's disagreement with the Hawaiian Watersports treatment of § 30511(a) as a jurisdictional requirement does not undermine its agreement with the Hawaiian Watersports analysis of what constitutes a "written notice of a claim" for purposes of § 30511(a).

Watersports, 2008 WL 3065381, at *4.[7]  Thus, the second Doxsee

requirement is met in this case.

The third requirement, whether there is a reasonable

possibility that the claim is subject to limitation, is also

established by the same facts that established the second

requirement.  See id. (stating the limitation plaintiff "should

have been on notice that" it had to take "affirmative steps to

limit its liability" for the potential wrongful death claim).

Turning to the first Doxsee requirement, the

Limitation Plaintiffs point out that the Preservation of

Evidence letter was only addressed to some of the Vessel's

owners.  The Preservation of Evidence Letter was addressed to:

> Island Divers Hawaii
> aka: Honu Watersports LLC
> Attn: Matthew Zimmerman

[Livingston Decl., Exh. K.]  Two of the four Limitation

Plaintiffs were recipients of the letter.  Further, the

Limitation Plaintiffs admit that they provided the DSD

Experience "through their d/b/a Island Divers Hawaii."  [Tsogt

---

[7] This Court recognizes that the vessel at issue in Hawaiian
Watersports was a $750 kayak.  2008 WL 3065381, at *4.  However,
the same rationale applies; where the actual or potential claim
arises from a death, no amount of money can restore what the
claimants lost.  Whether the vessel is worth $750 or $40,000,
the recipients of the notice cannot doubt that the claim could
exceed the value of the vessel.  This Court expresses no opinion
on the issue of whether there is a higher vessel value at which
more is required in the notice than the mere statement that a
death is involved.

Claimants' CSOF at ¶ 2; Limitation Pltfs.' CSOF at ¶ 2 (admitting the Tsogt Claimants' ¶ 2).]   Limitation Plaintiffs Honu Group LLC and Fish N Dive LLC were not named in the Preservation of Evidence Letter.   However, the Limitation Plaintiffs admit Zimmerman was the sole member and manager of Honu Group LLC, and Honu Group LLC was the sole member and manger of Fish N Dive LLC.   [Tsogt Claimants' CSOF at ¶ 1; Limitation Pltfs.' CSOF at ¶ 1.]   Even viewing the Preservation of Evidence Letter in the light most favorable to the Limitation Plaintiffs, there is no genuine issue of fact as to the question of whether the Preservation of Evidence Letter was sent to the owners of the Vessel.[8]

The Limitation Plaintiffs also argue the Preservation of Evidence Letter did not identify the Dive Barge, or any vessel at all.   The Preservation of Evidence Letter stated T.T. died "while he was participating in a drift dive with your company, Island Divers Hawaii." [Livingston Decl., Exh. K.]   It is undisputed that T.T. drowned during an IDH DSD Experience. [Tsogt Claimants' CSOF at ¶ 2; Limitation Pltfs.' CSOF at ¶ 2.] The Limitation Plaintiffs also admit that, on the day of the

---

[8] "Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists." Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation v. California, 973 F.3d 953, 961 (9th Cir. 2020).

incident, the Vessel was used to transport the DSD group to the dive site and as a dive platform.  [Tsogt Claimants' CSOF at ¶ 8; Limitation Pltfs.' CSOF at ¶ 8 (admitting that part of the Tsogt Claimants' ¶ 8).]  The Preservation of Evidence Letter requested the preservation of "any and all . . . logs, **captain manifests**, printouts of coordinates . . . and other information related to [T.T.'s] interaction with your company."  [Livingston Decl., Exh. K (emphasis added).]  Thus, even construing the record in the light most favorable to the Limitation Plaintiffs, the Preservation of Evidence Letter addressed an activity that involved a vessel, and the recipients of the letter knew or should have known the vessel at issue was the Dive Barge.

The Limitation Plaintiffs next argue the Preservation of Evidence Letter cannot constitute a written notice of a claim because it did not assign blame, fault, or liability for T.T.'s death.  The Preservation of Evidence Letter stated that the Davis Levin Livingston law firm was "retained to investigate the death of [T.T.] on January 5, 2019."  [Id.]  The letter also referred to all of the items described as "evidence" and stated that changing or destroying the items would be "consider[ed] spoliation of evidence."  [Id.]  Among the items described were "all documents provided to and signed by [T.T.], his parents or guardians, including waivers and consent documents."  [Id.]  In context, "waivers" clearly refers to liability waivers that T.T.

or his parent/guardian may have executed prior to T.T.'s participation in the DSD Experience.  Even in the light most favorable to the Limitation Plaintiffs, when the Preservation of Evidence Letter is read in its entirety and its "whole tenor" is considered, the letter provided the Limitation Plaintiffs notice that there was a potential claim arising from T.T.'s death.  See Hawaiian Watersports, 2008 WL 3065381, at *3.

In considering the Tsogt Claimants' request for summary judgment, this Court must give the Limitation Plaintiffs "the benefit of all reasonable inferences."  See Pauma Band, 973 F.3d at 961 (citation and quotation marks omitted).  However, the Limitation Plaintiffs' argument that the Preservation of Evidence Letter did not "even suggest[] that the investigation [referred to in the letter] might involve the vessel or the vessel's owners," is not reasonable and is contrary to the text of the letter.  See Mem. in Opp. at 2.  Moreover, even assuming there was ambiguity regarding whether the Preservation of Evidence Letter was describing a potential claim, the Limitation Plaintiffs should have sought clarification.  See Hawaiian Watersports, 2008 WL 3065381, at *4 (some citations omitted) (citing Doxsee Sea Clam Co., 13 F.3d at 554–555 (citing In re Allen N. Spooner and Sons, Inc., 253 F.2d 584, 586 (2d Cir. 1958) (Hand, J., concurring) ("it is indeed reasonable to require [plaintiff] to make the claimant define his position

20

. . . If the claimant refuses to do so, it may be that the period does not begin to run until he does")))   The Limitation Plaintiffs have not presented any documents or testimony suggesting that they sought clarification of the Preservation of Evidence Letter.  For all of these reasons, this Court rejects the Limitation Plaintiffs' construction of the Preservation of Evidence Letter as a letter devoid of reference to any potential claim arising from T.T.

There are no genuine issues of material fact, and this Court concludes, as a matter of law, that the Preservation of Evidence Letter satisfies all of the Doxsee requirements.  The Preservation of Evidence Letter constitutes a "written notice of a claim," triggering the six-month period in § 30511(a).  Because the Limitation Plaintiffs failed to initiate a limitation action within six months after receiving the § 30511(a) notice, they are precluded from seeking limitation of their liability for T.T.'s death, pursuant to the Limitation Act.  The Tsogt Claimants are therefore entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  Summary judgment as to the Limitation Plaintiffs' First Amended Complaint is therefore granted in favor of the Tsogt Claimants.

21

## CONCLUSION

For the foregoing reasons, the Tsogt Claimants' Motion to Dismiss or for Summary Judgment for Failure by Plaintiffs-in Limitation to File Action Within Six Months of Receiving Notice of a Claim, filed July 23, 2020, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is DENIED as to the Tsogt Claimants' request to dismiss this action for lack of subject matter jurisdiction, but the Motion is GRANTED as to the Tsogt Claimants' request for summary judgment based on the untimely filing of this action.

No other claimants have sought summary judgment as to their claims.  In light of the rulings in this order, all claims other than the Tsogt Claimants' claims are DISMISSED AS MOOT. There being no issues remaining before this Court in the Limitation Plaintiffs' First Amended Complaint for Exoneration from or Limitation of Liability, filed January 17, 2020, the Clerk's Office is DIRECTED to enter judgment in favor of the Tsogt Claimants.  Judgment shall be entered on November 23, 2020, unless a timely motion for reconsideration of this Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 6, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

IN THE MATTER OF FISH N DIVE LLC, ET AL.; CV 19-00604 LEK-WRP;
ORDER GRANTING IN PART AND DENYING IN PART THE TSOGT CLAIMANT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT FOR FAILURE BY
PLAINTIFFS-IN-LIMITATION TO FILE ACTION WITHIN SIX MONTHS OF
RECEIVING NOTICE OF A CLAIM